IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NGHIEP VAN NGUYEN | : | |
| | : | |
| | : | |
| Petitioner, | : | 3:26-cv-1151 |
| | : | (JUDGE MARIANI) |
| v. | : | |
| | : | |
| JESSICA SAGE, WARDEN OF FCI | : | |
| LEWISBURG, *et al.*, | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM OPINION

### I.    BACKGROUND

Petitioner Nghiep Van Nguyen ("Petitioner"), a citizen of Vietnam who entered the

United States in 1986 as a child refugee, filed a counseled petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2241.  (Doc. 1).  Petitioner is detained within the Middle District of

Pennsylvania and names as Respondents Jessica Sage, Warden of FCI Lewisburg, and

Michael Rose, ICE Field Office Director, Philadelphia, Enforcement and Removal

Operations.  (*Id.*, ¶¶ 8-9).

In the petition, Petitioner raises constitutional, statutory, and regulatory claims.

Specifically, Petitioner claims that his re-detention violates the Due Process Clause of the

Fifth Amendment, 8 U.S.C. § 1231, 8 C.F.R. § 241.13, and the Administrative Procedures

Act ("APA") because his re-detention has exceeded six months and his removal to Vietnam

is significantly unlikely in the reasonably foreseeable future.  (*Id.*, ¶¶ 52-64).  Respondents

oppose the petition, stating that the Court "should deny the petition because Petitioner has failed to establish that his detention has been unconstitutionally prolonged and that there is no significant likelihood of removal in the reasonably foreseeable future." (Doc. 4 at 1).

## Factual Allegations

Petitioner was born in Vietnam in 1977 and entered the United States as a child refugee in 1986. (*Id.*, ¶ 1, 23). He became a Lawful Permanent Resident in 1987. (Doc. 4-4 at 6). In 2007, Petitioner pled guilty to conspiracy to manufacture more than 100 marijuana plants, in violation of 21 U.S.C. § 846, and manufacturing more than 100 marijuana plants within 1000 feet of a school, in violation of 21 U.S.C. § 860(a). (*Id.*, ¶ 1, 24); *see United States v. Nguyen*, No. 2:07-cr-00410-CMR, Doc. No. 49 (E.D. Pa. Oct. 11, 2007). On January 12, 2010, an Immigration Judge ordered Petitioner removed but he "was not removed because Vietnam would not accept him." (*Id.*, ¶ 25). After a period of detention in immigration custody, Petitioner was released under an Order of Supervision ("OSUP"). (*Id.*, ¶ 26). Petitioner last criminal conviction occurred many years ago, and he alleges he "is a hardworking and productive member of society who supports his family and who served his criminal sentence." (*Id.*, ¶ 27). According to Petitioner, "ICE releasing Petitioner from detention and failing to remove him implied that he was not viewed as a danger to the community of flight risk." (*Id.*, ¶ 28).

On November 12, 2025, Petitioner appeared for his annual ICE check-in. (*Id.*, ¶ 29). At the check-in, an ICE officer re-detained Petitioner. (*Id.*). Petitioner claims that it is

2

unclear whether ICE has begun processing a request for repatriation to Vietnam. Further, Vietnam has not yet issued a travel document to execute Petitioner's removal. (*Id.*). Petitioner has remained detained since November 12, 2025, and alleges that his removal to Vietnam is not likely in the reasonably foreseeable future. (*Id.*, ¶¶ 29-31). He "does not have a Vietnamese passport and ICE did not obtain travel documents from Vietnam for Petitioner before again detaining him." (*Id.*).

### History of Repatriation to Vietnam

Petitioner next recounts the history of repatriation to Vietnam (*id.*, ¶¶ 32-40) and provides two declarations filed in habeas litigation in the Western District of Pennsylvania to support his allegations that his removal to Vietnam is significantly unlikely in the reasonably foreseeable future. (Docs. 6-2, 6-3). "Before a Vietnamese immigrant without a passport or other travel documents can be repatriated, Vietnam must issue a passport or other travel documents in response to a request from ICE." (Doc. 1, ¶ 32). Between the end of the Vietnam War and 2008, "Vietnam refused to repatriate any Vietnamese immigrant who had been ordered removed from the United States." (*Id.*, ¶ 33). In 2008, the United States and Vietnam reached a diplomatic agreement under which Vietnam agreed to start considering repatriations requests for certain Vietnamese immigrants. (*Id.*, ¶ 34). "The agreement obligated Vietnam to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995, and provided that "Vietnamese citizens are

not subject to return to Vietnam under this agreement if they arrived in the United States before July 12, 1995." (*Id.*).

"Prior to 2017, ICE maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given Vietnam's consistent refusal to repatriate them." (*Id.*, ¶ 35). Petitioner alleges that ICE adopted a policy of detaining pre-1995 Vietnamese immigrants for no longer than ninety days after their removal orders became final and that, after ninety days, ICE would generally release these immigrants into the community on an OSUP. (*Id.*). According to Petitioner:

> In 2017, after some negotiations with Vietnam led ICE to believe Vietnamese officials would begin considering travel documents for pre-1995 Vietnamese immigrants, ICE began re-detaining some Vietnamese individuals who had previously been released on supervision and detaining individuals for longer than 90 days based on a possibility that Vietnam would issue the requisite travel documents. That possibility did not materialize.

(*Id.*). Because that possibility did not materialize, ICE reversed its position again and acknowledged that the removal of pre-1995 immigrants to Vietnam was not significantly likely. (*Id.*, ¶ 36). "In October 2018, ICE instructed field offices to resume the practice of releasing pre-1995 Vietnamese immigrants within 90 days of a final order of removal." (*Id.*). Between 2017 and 2019 "ICE requested travel documents for pre-1995 Vietnamese immigrants 251 times" and "Vietnam granted those requests only eighteen times." (*Id.*, ¶ 37).

In November 2020, the United States and Vietnam signed a Memorandum of Understanding ("2020 MOU") "that creates a process for deporting pre-1995 immigrants."

(*Id.*, ¶ 38). Between September 2021 and September 2023, the Government "deported only four pre-1995 Vietnamese immigrants." (*Id.*, ¶ 39). To the best of Petitioner's counsel knowledge, the government "has only conducted eight removal flights to Vietnam in 2024, and two flights removal in 2021 and 2023." (*Id.*, ¶ 40).

## II.    STANDARD OF REVIEW

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). It is well established that a federal habeas corpus petitioner generally has the

burden of proving facts entitling him to a discharge from custody.[1]  *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

## III.    ANALYSIS

In the petition, Petitioner alleges that his re-detention has exceeded six months and his removal to Vietnam is significantly unlikely in the reasonably foreseeable future.  (Doc. 1, ¶¶ 52-64).  Respondents oppose the petition, claiming that Petitioner "has failed to establish that this detention has been unconstitutionally prolonged and that there is no significant likelihood of removal in the reasonably foreseeable future."  (Doc. 4 at 1).  Respondents further assert that, even if Petitioner has met his burden, the Government has "sufficiently rebutted" that showing because "there remains a reasonable likelihood that he will be removed in the reasonably foreseeable future."  (*Id.* at 7).

### Section 1231(a) and *Zadvydas*

8 U.S.C. § 1231(a) "governs the detention, release, and removal of individuals ordered removed."  *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022).  "Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-

---

[1]    Although not raised by either party, the Court has jurisdiction to consider the issues raised in the petition. *See Khalil v. President, United States*, 164 F.4th 259, 277-79 (3d Cir. 2026) (holding that detention specific claims, like length and conditions of confinement do not "arise from" removal proceedings and can be addressed by district courts); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (declining to interpret 8 U.S.C. § 1252(b)(9) in an "extreme way that would also make claims of prolonged detention effectively unreviewable"). Nor is Petitioner required to exhaust his administrative remedies. *See Jaleel v. Sage*, 2026 WL 1234846, at *2 (M.D. Pa. May 5, 2026) (exhaustion of administrative remedies "would be pointless" where petitioner "is detained under 8 U.S.C. § 1231, which precludes immigration judges from holding a bond hearing").

day removal period."[2] *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(A)). "The statute provides that the Government 'shall' detain noncitizens during the statutory removal period." *Arteaga-Martinez*, 596 U.S. at 578; *see also Guzman Chavez*, 594 U.S. at 528 ("During the removal period, detention is mandatory.")

"After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specific grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal." *Arteaga-Martinez*, 596 U.S. at 578-79 (citing 8 U.S.C. § 1231(a)(6)). "Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue for those who fall within the four designated statutory categories." *Arteaga-Martinez*, 596 U.S. at 579.

In *Zadvydas* the Supreme Court found that a statute "permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. To avoid those concerns, the Supreme Court interpreted 8 U.S.C. § 1231(a)(6) to limit post-removal order detention to a period "reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001); *see also Clark v. Martinez*,

---

[2]     "The removal period begins on the latest of three dates: (1) the date the order of removal becomes administratively final, (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." *Guzman Chavez*, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(B)).

543 U.S. 371, 384 (2005) (clarifying *Zadvydas* and noting that the "the statute should be read (in line with the other plausible reading) to authorize detention *only for a period consistent with the purpose of effectuating removal*.") (emphasis added).  Detention for up to six months after a final order of removal is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701.

The expiration of the six-month period "does not mean that every alien not removed must be released after six months." *Id.*  Rather, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*  Accordingly, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."[3] *Id.*  However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *Id.* at 699.

## Petitioner Satisfied His Burden

Petitioner's presumptively reasonable six-month period of re-detention under Section 1231(a)(6) has run.  *Zadyvdas*, 533 U.S. at 701.  He has been detained for over six months while the Government has attempted to effectuate his removal from the United States.  As

---

[3]    In addition, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. "*Zadvydas* does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play:  the longer an alien is detained, the less he must put forward to obtain relief." *Alexander v. Att'y Gen. U.S.*, 495 Fed. App'x 274, 276-77 (3d Cir. 2012) (non-precedential).

such, the Court finds that Petitioner's re-detention under 8 U.S.C. § 1231(a)(6) has become unreasonably prolonged. And, as discussed more fully below, Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

In support of his argument that his removal to Vietnam is significantly unlikely in the reasonably foreseeable future, Petitioner submits two declarations supplied in *Luong v. Oddo*, No. 3:25-cv-422 (W.D. Pa.) (Taylor, M.J.). Petitioner submits the declaration of Tin Thanh Nguyen, a licensed attorney practicing immigration law in North Carolina. (Doc. 6-3 ¶¶ 1-4). He represents Vietnamese nationals in federal habeas proceedings throughout the United States and for almost twenty years has "specialized in immigration and deportation cases involving Vietnamese citizens." (*Id.*, ¶ 5). His work "includes liaising with the Vietnamese government to facilitate the issuance of travel documents" and is "familiar with the process and challenges involved in securing documents for pre-1995 arrivals to the United States." (*Id.*, ¶ 6). As of the date of Mr. Nguyen's declaration, December 17, 2025, he has worked with or assisted "on the cases of almost a hundred pre-1995 arrivals for whom ICE has requested travel documents from Vietnam." (*Id.*, ¶ 7).

Mr. Nguyen's declaration goes on to detail the process to obtain travel documents from Vietnam. (*Id.*, ¶ 8). Once a noncitizen completes certain forms and provides identity documents, the "travel document request is then forwarded to the Detention and Deportation Officer ("DDO") assigned to Vietnam cases" within ICE's Headquarters,

9

Removal and International Operations ("RIO").[4]  "As part of the travel document request, ICE requests RIO "to help translate the person's identity documents into Vietnamese to complete the travel document request package before formally submitting it to the Government of Vietnam." (*Id.*, ¶ 9)  "This process may take many months given the extensive documentation that needs to be gathered prior to submission and the difficulties that detained individuals have in gathering those documents while they are in detention and away from the families, communities, and loved ones." (*Id.*, ¶¶ 9-10).  He notes that "the most challenging client matters involve those clients who immigrated to the United States before 1995, typically as refugees from armed conflict that occurred in Southeast Asia during the 1970s and 1980s." (*Id.*, ¶ 11).  Based on his "years of interactions with staff at the Vietnamese embassy," Mr. Nguyen states that "the Vietnamese government subjects passports or travel document applications made by pre-1995 arrivals to substantial vetting, particular those without Vietnamese birth certificates, to ensure that each applicant has a legitimate claim to Vietnamese citizenship and the right to return to Vietnam."[5] (*Id.*, ¶ 12).

---

[4]     "RIO" or "HQ-RIO" refers to ICE's "Headquarters Removal and International Operations." *Tran v. Scott*, 2025 WL 2898638, at *3 (W.D. Wash. Oct. 12, 2025).

[5]     "This vetting process includes an investigation by the Ministry of Public Security into the location of each applicant's last known address while living in Vietnam—through site visits—and into the identity of each applicant's surviving relatives in Vietnam—through interviews, information which each applicant must provide when requesting a passport or travel document." (Doc. 6-3, ¶ 13).  Mr. Nguyen knows "that these investigations occur because the pre-1995 arrivals whom I have assisted with passport or travel document applications routinely receive reports from their former neighbors or family members that they have been contacted by Ministry of Public Security Officers following the submission of a passport or travel document request." (*Id.*, ¶ 14).  "For many Vietnamese nationals, especially the ones who entered the United States prior to 1995, the process to decide whether to issue travel document takes even longer since many people

For pre-1995 arrivals, like Petitioner, "the process of applying for these documents usually takes a long time," (*id.*, at ¶ 16), and "the likelihood that Vietnamese government will approve a particular pre-1995 arrival's request is unknowable." (*Id.*, ¶ 17). "To further complicate matters, in my experience when an application fails to pass this substantial vetting process, the Vietnamese government will not issue a formal denial of the application but rather will take no action and, in doing so, will in effect be an informal denial." (*Id.*, ¶ 18). In Mr. Nguyen's experience, "it can take many months to get any answer from Vietnam about whether it will issue a travel document." (*Id.*, ¶ 19). He further represents that "it is not certain that each person who submits a travel document will be granted one with certainty" but that "[i]t is likely that the Vietnamese government would approve ICE's request for a travel document if they are able to obtain a birth certificate and identify and interview known relatives in Vietnam." (*Id.*, ¶ 21). However, "this is dependent on the individual." (*Id.*).

Petitioner also submits the declaration of Dr. Thao Ha, Ph.D, a Professor of Sociology at MiraCosta College. (Doc. 6-2, ¶ 1). For more than twenty years, he has researched, written, and taught on Vietnamese refugee history and U.S. immigration laws as applied to refugees. (*Id.*, ¶ 2). In 2008, the United States and Vietnam entered into a Memorandum of Understanding that "explicitly excluded individuals who entered the United

---

no longer have any relatives in Vietnam who can verify their identity, a physical address that may still exist in Vietnam, or they do not have any documentation from Vietnam at all." (*Id.*, ¶ 15).

States before July 12, 1995, from repatriation." (*Id.*, ¶ 8).  "As a result, pre-1995 Vietnamese refugees were considered non-removable as a matter of intentional agreement." (*Id.*).

In 2020, the United States and Vietnam entered into the 2020 MOU "that expanded removals to include pre-1995 arrivals." (*Id.*, ¶ 9).  However, the 2020 MOU "did not guarantee removal and did not eliminate the legal and documentary requirements imposed by Vietnam."[6] (*Id.*).  "Deportation to Vietnam requires issuance of a Vietnamese passport, which is granted only after Vietnam independently verifies that an individual is a Vietnamese citizen." (*Id.*, ¶ 10).  To obtain a Vietnamese passport, "applicants must typically provide proof of citizenship, such as a Vietnamese birth certificate or household registration book that existed at the time of birth." (*Id.*, ¶ 11).  "Many refugees lack such documentation due to war, displacement, rural births, or destruction or non-existence of records." (*Id.*). "Processing timelines are unpredictable and often extend for three to six months or longer." (*Id.*, ¶ 12).  In Dr. Ha's professional experience, "the existence of a pending or prepared travel document request does not establish that removal will occur with a reasonably

---

[6]    Pursuant to the 2020 MOU, "for a Vietnamese immigrant with an order of removal to be eligible for acceptance of return to Vietnam, they must meet four conditions:  (1) has Vietnamese citizenship and does not have citizenship of any other country at the same time; (2) has violated U.S. law and has been ordered removed by a U.S. competent authority (and, if sentenced to prison term, the individual must have completed any term of imprisonment before removal or a U.S. competent authority must have ordered a reduction in the sentence or the individual's release from prison); (3) resided in Vietnam prior to arriving in the United States and currently has no right to reside in any other country or territory; and (4) [REDACTED]." *Nam Van Phan v. Warden*, 2026 WL 1080390, at *4 (M.D. Pa. Apr. 21, 2026).  "The fourth mandatory condition is redacted and the government has not disclosed any information about what that conditions requires." *Id.* at *5 n.3.

foreseeable timeframe." (*Id.*, ¶ 14). He also cites to a class action litigation in the *Trinh v. Homan*, 466 F. Supp. 3d 1077 (C.D. Cal. 2020) where, as part of a settlement, "ICE produced quarterly reports documenting detention and travel documents issuance" from December 2021 through September 2023.[7] (*Id.*, ¶¶ 15-16). Dr. Ha's states that the "data demonstrates that even after the 2020 MOU, removal of pre-1995 Vietnamese refugees remain individualized, unpredictable, and frequently not achievable within a reasonable period of time." (*Id.*, ¶ 17).

In this matter, the Court finds that Petitioner, as pre-1995 Vietnamese child refugee, has demonstrated that his removal to Vietnam is significantly unlikely in the reasonably foreseeable future. "Courts in the Third Circuit have found that evidence of the process for producing travel documents from Vietnam for pre-1995 immigrants establishes good reason to believe that removal of a pre-1995 Vietnamese immigrant detained under 8 U.S.C. § 1231 is not reasonably foreseeable." *Nam Van Phan*, 2026 WL 1080390, at *5 (collecting cases). Respondents do not dispute that Petitioner is a pre-1995 Vietnamese child refugee who lacks a Vietnamese passport or other travels documents necessary for his repatriation to Vietnam. Nor do they seriously dispute Petitioner's factual allegations and evidence submitted in his petition and traverse. Petitioner has been continuously re-detained for over

---

[7]    According to Dr. Ha, ICE quarterly reports show that during December 2021 through September 2023: (1) pre-1995 Vietnamese nationals were detained for prolonged periods ranging from 47 to 529 days; (2) the average detention exceeded 160 days; (3) travel document issuances were inconsistent; and (4) departure dates were frequently unknown or never scheduled." (Doc. 6-2, ¶ 16).

six months and nearly four months after ICE sent his travel documents to the Vietnamese Embassy in January 2026. (Doc. 4-2).

Mr. Nguyen's and Dr. Ha's declarations make clear that the diplomatic process for repatriating a pre-1995 Vietnamese child refugee like Petitioner is highly individualized and that the fact-specific vetting process takes a significant amount of time. (Doc. 6-3, ¶¶ 9-17) (Doc. 6-2, ¶¶ 9-17). Requesting travel documents from Vietnam for a pre-1995 Vietnamese refugee does not mean they will be issued, and sometimes the Vietnamese Embassy constructively denies repatriation by simply not responding to ICE's request for travel documents. (*Id.*, ¶ 18). Although the 2020 MOU provides that Vietnam will generally issue a travel document within 30 days of receipt, ICE's request to Vietnam for travel documents for Petitioner has been pending for nearly four months, and Mr. Nguyen has yet to see "Vietnam issue a travel document within 30 days or less."[8] (*Id.*, ¶ 19). Accordingly, the Court finds that Petitioner has satisfied his initial burden under *Zadvydas* by establishing good reasons to believe that his removal to Vietnam is significantly not likely in the reasonably foreseeable future. *See Nam Van Phan*, 2026 WL 1080390, at *5; *see also Lam v. Noem*, 2026 WL 492383, at *6 (W.D. Pa. Feb. 23, 2026) (granting habeas petition where petitioner had been detained for less than six months and relying on Tin Thanh Nguyen's

---

[8]    *See Quan v. Bowen*, 2025 WL 3691858, at *5 (C.D. Cal. Nov. 14, 2025) ("And though the government has requested travel documents for Petitioner, the fact that it has not heard anything after over a month . . . when the 2020 MOU provides that it should generally hear within 30 days, 2020 MOU § 8(3), (4), does not inspire great confidence that it will be able to obtain them in the reasonably foreseeable future.").

declaration to find petitioner "met his heavy burden and has proven removal is not reasonably foreseeable"). The burden now shifts to Respondents. *Zadyvdas*, 533 U.S. at 701 ("After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.")

**Respondents Fail to Rebut Petitioner's Showing**.

Having met his initial burden, the burden shifts to the Respondents to rebut Petitioner's showing that his removal to Vietnam is significantly unlikely in the reasonably foreseeable future. Respondents submitted the declaration of Alex Hans under penalty of perjury and in accordance with 28 U.S.C. § 1746. Mr. Hans is a Deportation Officer for ICE, Enforcement and Removal Operations ("ERO"), and is "assigned to the ERO detained docket" at FCI Lewisburg. (Doc. 4-2, ¶ 1). After recounting Petitioner's criminal and immigration history, (*id.*, ¶¶ 3-9), Mr. Hans states the following regarding the revocation of Petitioner's OSUP and his present re-detention:

- "On or about November 12, 2025, Petitioner's OSUP was revoked and he was detained, *as it is believed* there is a significant likelihood of removal in the reasonably foreseeable future." (*Id.*, ¶ 10) (emphasis added).

- "On or about December 11, 2025, Petitioner was given a TD application to complete. On or about December 31, 2025, the application was returned to ERO and on or about

15

January 20, 2026, the TD application was sent to HQ-RIO to submit to Vietnam.[9] (*Id.*, ¶ 11).

- "On or about January 20, 2026, HQ-RIO submitted the TD application to Vietnam." (*Id.*, ¶ 12).

- "On or about February 24, 2026, a custody review was conducted pursuant to the regulations in 8 C.F.R. chapter require [sic], and it was determined that continued detention was warranted as Petitioner poses a significant public safety concern due to the serious of his criminal record and there is SLRRFF."[10] (*Id.*, ¶ 13).

- "HQ-RIO informs that there is SLRRFF to Vietnam as in Fiscal Year (FY) 2025 there were 699 people removed to Vietnam, including 327 which were pre-1995 entries. To date, since FY 2025, no TD request has been denied. Additionally, there are regular charters scheduled to Vietnam, the next one being in."[11] (*Id.*, ¶ 14).

- "It is anticipated that petitioner's removal from the United States once [sic] a TD is released." (*Id.*, ¶ 15).

---

[9]     "TD" as used in the Hans Declaration refers to "travel document." (Doc. 4-2, ¶ 7).

[10]     As used in the Hans Declaration, "SLRRFF" refers to "significant likelihood of removal in the reasonably foreseeable future." (Doc. 4-2, ¶ 10).

[11]     The Hans Declaration abruptly cuts off and does not indicate when the next charter flight to Vietnam will take place. In any event, the Declaration says nothing about *this Petitioner's* likelihood of removal to Vietnam in the reasonably foreseeable future sufficient to rebut Petitioner's showing under *Zadvydas*.

- "It is anticipated that petitioner's removal from the United States is imminent, therefore, there is SLRRFF." (*Id.*, ¶ 16).

The conclusory statements contained in Mr. Hans' declaration do not suffice to satisfy the Respondents' burden. There is no credible evidence that Petitioner's removal to Vietnam is significantly likely in the reasonably foreseeable future, let alone "imminent." (*Id.*). Although Respondents have provided the Court with general statistics regarding the repatriation of pre-1995 Vietnamese immigrants, these statistics say nothing about the likelihood of *the Petitioner's* removal to Vietnam in the reasonably foreseeable future. General repatriation statistics that Mr. Hans was informed of by HQ-RIO, without further context, are insufficient to rebut a showing that Petitioner's removal to Vietnam is significantly unlikely in the reasonably foreseeable future. (Doc. 4-2, ¶ 14). Courts in this district have found that the Government failed to satisfy its *Zadvydas* burden when it relies on vague and general assertions of the mere possibility of repatriation, without including any information specific to the petitioner, or when there is no evidence that the petitioner's travel documents were issued by his native country or even sent by ICE.[12] *See, e.g., Yang Li v.*

---

[12] Respondents' reliance on *Appiah v. Lowe* is misplaced. 2025 WL 510974 (M.D. Pa. Feb. 14, 2025). Unlike the petitioner in *Appiah*, here there is no evidence that Petitioner underwent a repatriation interview with Vietnamese officials or that the Government has regularly communicated with Vietnamese officials regarding Petitioner's repatriation. The only evidence before the Court is a letter addressed to the Vietnamese Embassy in D.C. dated January 20, 2025, not 2026 as stated in the Hans' Declaration. (Doc. 4-2, ¶ 12). The letter and its attachments say nothing about the likelihood of Petitioner's removal to Vietnam and there is no evidence that the travel documents request was even sent or received. (Doc. 4-4). And here, in contrast to *Appiah*, Respondents do not claim that Vietnam "has not denied [petitioner's] citizenship or the issuance of a travel document." *Appiah*, 2025 WL 510974, at *6; *Nam Van Phan*, 2026 WL 1080390, at *6 (distinguishing *Appiah* and noting "the caselaw the government relies on for this assertion does not concern the issuance of travel documents from Vietnam for pre-1995 refugees").

*Warden*, 2026 WL 1266248, at *6 (M.D. Pa. May 8, 2026) (government failed to satisfy

*Zadvydas* burden when it "provides no indication that the application has been sent to China

or when the application will be approved"); *Nam Van Phan*, 2026 WL 1080390, at *5

("Courts in the Third Circuit have also found that assertions from the government of a

remote possibility of eventual removal is not sufficient evidence to rebut that showing.")

(collecting cases).

Nor do Respondents attempt to explain why efforts to remove Petitioner from the

United States for the past fifteen years have been unsuccessful.[13] *See Thach v. English*,

2026 WL 1109344, at *2 (N.D. Ind.  Apr. 26, 2026) (granting petition where government

failed to rebut showing that petitioner's removal was unlikely in the reasonably foreseeable

future and the respondent "does not explain why efforts to remove Thach to Vietnam will be

successful now when they were unsuccessful in 2012 and when Vietnam has

historically refused to accept individuals who entered the United States before 1995" for

repatriation).  And Respondents provide no insight whatsoever as to when or if Vietnam

might reach its decision and issue travel documents to Petitioner.  *See Yang Li*, 2026 WL

1266248, at *6 (granting habeas petition where respondent "provides no indication that the

application has been sent to China or when the application will be approved"); *see also*

---

[13]    Since Petitioner's removal order became final in 2010, the Government has been unable to repatriate him to Vietnam.  For the last fifteen years, Respondents have never claimed that Petitioner can be removed to a third country other than Vietnam, *see* 8 U.S.C. § 1231(b)(2)(E), let alone offer evidence that Petitioner's deportation to an unknown third country is significantly likely in the reasonably foreseeable future.

*Nguyen v. Blanche*, 2026 WL 1021212, at *4 (D. Nev. Apr. 15, 2026) (granting petition where respondent failed to provide evidence that Vietnam "has responded to those communications, or whether Vietnam has agreed to accept Nguyen and issue his travel documents"); *see also Son Ho v. English*, 2026 WL 1004291, at *3 (N.D. Ind. Apr. 14, 2026) (granting habeas relief where government failed to offer in rebuttal "any insight as to when Vietnam might reach its decision or the likelihood that Vietnam will issue travel documents").  Because Respondents fail to rebut Petitioner's showing that his removal to Vietnam is significantly unlikely in the reasonably foreseeable future, the Court will grant Petitioner's habeas petition.  Petitioner's re-detention under 8 U.S.C. § 1231(a)(6) has exceeded six months consecutively and is beyond the period "reasonably necessary to bring about [his] removal from the United States."  *Zadvydas*, 533 U.S. at 689 (2001).

As a remedy, Petitioner seeks his immediate release from custody.  A noncitizen with a final order of removal may be released from custody but that release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances."  *Zadvydas*, 533 U.S. at 700.  The Court will order Respondents to release Petitioner for custody within 48 hours and to restore the conditions of his prior OSUP.  *See Nam Van Phan*, 2026 WL 1080390, at *6 (granting petition and ordering release from custody and restoration of "the conditions of his prior supervisory release"); *see also Wazir v. Att'y Gen. U.S.*, 2026 WL 1122610, at *3 at *4 (ordering release

19

and ordering that petitioner "shall be subject to the terms of supervision in 8 U.S.C. § 1231(a)(3) and attendant regulations").

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be granted.[14]  A separate Order follows.

Robert D. Mariani
United States District Judge

---

[14]    Petitioner also raises claims of ICE's noncompliance with its own regulations and further alleges a violation of the APA. Regulations "promulgated around the time, and after, the *Zadvydas* decision established a series of processes for determining whether an alien should be released from custody after the expiration of the ninety-removal period." *Alexander*, 495 Fed. App'x at 277 (citations omitted).  These regulations include 8 C.F.R. § 241.4 ("Continued detention of inadmissible, criminal, and other aliens beyond the removal period," and 8 C.F.R. § 241.13 ("Determination of whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future.").  "A failure to satisfy *Zadvydas* may not necessarily be fatal to an alien's ability to prevail on alternative grounds predicated on the regulatory non-compliance." *Id.* Because Petitioner has satisfied *Zadvydas*, the Court declines to consider the remaining regulatory and APA claims at this time.